Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL BRESSMAN** <br><br> Defendant. | Criminal No. 18-0675 (ES) <br><br> OPINION |

**SALAS DISTRICT JUDGE**

Before the Court is defendant Michael Bressman's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 28 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

**I.    BACKGROUND**

On June 14, 2019, Defendant pleaded guilty to one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10B-5 (Count One); and one count of investment adviser fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-17, and 18 U.S.C. § 2 (Count Two). (D.E. No. 12, Guilty Plea; D.E. No. 27, Final Judgment). After considering the relevant factors under 18 U.S.C. § 3553(a), submissions by counsel, the Presentencing Report, and arguments made at the sentencing hearing, the Court sentenced Defendant to twenty-four months of imprisonment on each count, to be served concurrently, and an eighteen-month term of supervised release. (Final Judgment at 2–3). Defendant is currently serving his sentence at

the Federal Correctional Institution, Schuylkill, Pennsylvania ("FCI Schuylkill"). *Find an Inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (last visited Nov. 12, 2021) (Reg. No.: 71821-050). His projected release date is June 10, 2022. *Id.*

Defendant moves *pro se* for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See generally* Motion). He argues that the COVID-19 pandemic, particularly the Delta variant, and his medical conditions—namely, pulmonary sarcoidosis—create extraordinary and compelling circumstances to warrant compassionate release.[1] (*Id.*). On September 23, 2021, the Government submitted its opposition to Defendant's Motion. (D.E. No. 32 ("Gov. Opp. Br.")).

## II. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in

---

[1] Defendant also briefly references his age (sixty-four) in his Motion. This reference, however, appears to be made in support of the proposition that Defendant's "chance of recidivism is extremely minimum." (*See* Motion at 1 ("I am 64 years old, a first time [sic] offender with no criminal record, nor history of violence nor drug use. I will have served over 50% of my sentence including earned good time at the end of August 2021.")). Because a defendant's "chance of recidivism" is relevant to the § 3553(a) factors, the Court will not consider Defendant's age in connection with his alleged extraordinary and compelling circumstances. Nonetheless, even if Defendant's age was presented as a contributing factor to establish an extraordinary and compelling reason for sentence reduction, as explained herein, because the vaccination Defendant received is highly effective "among people of diverse *age*, sex, race, and ethnicity categories," Defendant's age does not materially change the Court's analysis. *See Pfizer-BioNTech COVID-19 Vaccine Overview and Safety (also known as COMIRNATY)*, Center for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-The ncov/vaccines/different-vaccines/Pfizer-BioNTech html (last updated Oct. 28, 2021) (hereinafter, "Pfizer Vaccine Overview") (emphasis added).

> section 3553(a) to the extent that they are applicable, if it finds that-
>
> (i). extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Per Congressional directive and prior to the enactment of the First Step Act, the Sentencing Commission issued a policy statement addressing motions filed by the Director of the BOP. U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018). However, the Sentencing Commission has not updated its policy statement since the First Step Act expanded relief under § 3582(c)(1)(A) by permitting defendant-filed motions for a sentence reduction. Thus, the Third Circuit recently joined the growing list of Courts of Appeals and held that, because the Sentencing Commission's policy statement "explicitly limits its application to [BOP]-initiated motions," the policy statement does not bind the Court. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). Accordingly, no applicable policy statement exists for § 3582(c)(1)(A) motions initiated by a defendant.

Nonetheless, defendants still bear the statutory burden to demonstrate that they are entitled to a sentence reduction by satisfying procedural perquisites and showing extraordinary and compelling circumstances. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Epstein*, No. 14-0287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). In addition, the Court must find that "the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, No. 18-0653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020); 18 U.S.C. § 3582(c)(1)(A).

### III. ANALYSIS

#### A. Exhaustion

As an initial matter, the Government does not dispute that Defendant has satisfied the

3

exhaustion requirement. (*See* Gov. Opp. Br. at 2–3). The Government presented to the Court that Defendant filed his request for compassionate release with the BOP on December 19, 2020, and again on February 27, 2021. (*Id.* at 2). Because more than thirty days have passed since Defendant filed his requests with the BOP, the Court agrees that the Motion is properly before the Court for consideration pursuant to § 3582(c)(1)(A). *See United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020) (holding that the defendant may file the motion to the Court "thirty days after the warden receives his request").

   **B.**  **Extraordinary and Compelling Reasons for Reduction**

As discussed above, prior to the enactment of the First Step Act, the Sentencing Commission issued a policy statement for § 3582(c)(1)(A) motions initiated by the Director of the BOP. U.S.S.G. § 1B1.13. The policy statement specifies that extraordinary and compelling reasons for compassionate release exist when, *inter alia*, the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.1(A)(ii)(I). In addition, the policy statement includes a catchall provision that allows the Director of the BOP to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the enumerated reasons described in the policy statement. *Id.* at cmt. n.1(D). While the Court is not constrained by the Sentencing Commission's policy statement, it will refer to it as guidance in determining whether extraordinary and compelling reasons exist for a sentence reduction. *See Andrews*, 12 F.4th at 258–59.

In the context of defendant-filed compassionate release motions in the wake of COVID-19, courts consistently consider two components under the extraordinary and compelling

circumstances analysis: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020). With respect to evaluating defendants' medical conditions, courts have used as guideposts the CDC's list of medical conditions that can make individuals "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 14, 2021) (last visited Nov. 8, 2021) ("CDC Medical Conditions List"); *see e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same).

With respect to the likelihood of COVID-19 infection, courts in the Third Circuit and around the country have increasingly addressed the impact of vaccination when considering motions for compassionate release, taking into account, *inter alia*, the availability of COVID-19 vaccines at prisons, the rates of vaccination among the inmate population and staff, and the defendants' vaccination records. *See, e.g.*, *United States v. Battle*, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (finding no "extraordinary and compelling reasons" when, despite his health conditions, the defendant was fully vaccinated); *United States v. Kirkland*, No. 06-0911, 2021 WL 1541068, at *5 (D.N.J. Apr. 20, 2021) (holding that the defendant failed to establish an extraordinary and compelling reason for release because he and inmates in his wing were fully vaccinated and because the vaccination was highly effective); *United States v. Martin*,

No. 98-0178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021) (collecting cases holding that the risk of infection from the Delta variant does not create extraordinary and compelling reasons for release when the defendant and the majority of his fellow inmates were fully vaccinated); *United States v. Bonilla*, No. 20-0083, 2021 WL 3634181, at *2 (D.N.J. Aug. 17, 2021) (collecting cases holding that an inmate's refusal to be vaccinated in the absence of a legitimate medical reason was fatal to establishing an "extraordinary and compelling" reason for compassionate release). With these decisions in mind, the Court will examine Defendant's medical conditions and his likelihood of being infected by the virus that causes COVID-19.

The crux of Defendant's argument is that his underlying condition—pulmonary sarcoidosis—renders him "extremely vulnerable to infection and the possibility of death," particularly because of the Delta variant. (Motion at 1–2). As support, Defendant filed a letter from Dr. Edward A. Dimitry, dated February 29, 2008, where Dr. Dimitry stated that the bronchoscopy Defendant underwent was "highly supportive of a clinical diagnosis of underlying pulmonary sarcoid." (D.E. No. 26-2 at 1). Defendant's medical records since his incarceration, however, do not support that his pulmonary sarcoidosis was a persistent condition. Defendant mentioned his sarcoidosis once during his incarceration—during a medical visit dated February 3, 2021, when Defendant reported several issues after shoveling snow as part of his job in the prison. (D.E. No. 34 ("Med. Rec.") at 6[2]). He reported neck and right knee pain, and that "he had sarcoidosis and that his breathing is more difficult due to this." (*Id.*). Based on these complaints, Defendant requested a "medical excuse to not do snow removal." (*Id.*). During that medical visit, it was observed that Defendant had no respiratory distress, no dyspnea, and no medical indication for job restriction. (*Id.* at 7–8). Defendant was not given any medication but

---

[2] Pin cites to this document refer to the pagination automatically generated by the Court's Electronic Case Filing system.

6

was advised that he should "[f]ollow [] up at Sick Call as [n]eeded." (*Id.* at 8). Subsequently, Defendant was seen for other medical conditions on three occasions on March 29, 2021, April 14, 2021, and July 21, 2021. (*Id*. at 1–5). He did not complain about any respiratory issues during those visits. (*Id.*). The Court thus finds that, despite Defendant's diagnosis of sarcoidosis from over thirteen years ago, this diagnosis alone, without more, does not support that that Defendant has an ongoing chronic lung disease.

But even assuming Defendant currently has pulmonary sarcoidosis, this condition has not been identified by the CDC as one of the chronic lung diseases that can make an individual more likely to get severely ill from COVID-19. *See* CDC Medical Conditions List (listing moderate to severe asthma, bronchiectasis, cystic fibrosis, and pulmonary hypertension, *inter alia*, under "chronic lung diseases"). Indeed, in January 2021, Defendant was infected with the virus that causes COVID-19 but was asymptomatic despite having an alleged underlying condition. (Med. Rec. at 14). This record significantly cuts against Defendant's argument that he is "extremely vulnerable to infection" and faces "the possibility of death" from the virus. (*See* Motion at 1).

To the contrary, the Court finds that Defendant has a low likelihood of reinfection. Defendant is currently housed at FCI Schuylkill. The facility houses a total of 1,081 inmates. *FCI Schuylkill*, BOP, https://www.bop.gov/locations/institutions/sch/ (last visited Nov. 12, 2021). Since the onset of the pandemic, FCI Schuylkill had 459 inmates and 73 staff members test positive for COVID-19; those individuals have since recovered. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Nov. 12, 2021). As of this writing, the facility has zero inmate and two staff members currently infected with COVID-19. *Id.* Despite any prior surge of positive COVID-19 cases at FCI Schuylkill, it appears that, at present, the facility is combating the spread COVID-19 effectively.

More importantly, like all BOP facilities all over the country, FCI Schuylkill has made COVID-19 vaccines available to its staff and inmates who wish to receive them. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited Nov. 12, 2021). As of this writing, 819 inmates and 167 staff at FCI Schuylkill have been fully vaccinated. *Id.* Defendant's medical records indicate that he has received the first dose of Pfizer's vaccine on September 3, 2021. (Med. Rec. at 74). This vaccine is "95% effective at preventing laboratory-confirmed infection with the virus that causes COVID-19 in people who received two doses and had no evidence of being previously infected." Pfizer Vaccine Overview. The vaccine is also "highly effective in clinical trials at preventing COVID-19 among people of diverse *age*, sex, race, and ethnicity categories and *among people with underlying medical conditions*." *Id.* (emphases added). All approved vaccines, including the Pfizer vaccine, are also "highly effective at preventing severe disease and death, *including against the Delta variant*." *Delta Variant: What We Know About the Science*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated Aug. 26, 2021) (emphasis added). Given the currently low infection rate at Defendant's facility and the fact that he is in the process of becoming fully vaccinated, if not already, the Court finds that Defendant fails to show that he is at a greater risk of reinfection, or that he is at an increased risk of severe illness from COVID-19 if he becomes reinfected. *See Battle*, 2021 WL 4550925, at *2.

For these reasons, Defendant fails to present extraordinary and compelling reasons for a sentence reduction. Because Defendant does not pass the initial threshold under § 3582(c)(1)(A), the Court need not consider the applicable § 3553(a) factors.

### IV.     CONCLUSION

For the forgoing reasons, Defendant's Motion is DENIED. An appropriate Order

accompanies this Opinion.


Date:   November 22, 2021                             *s/Esther Salas*
                                                                           **Esther Salas, U.S.D.J.**